ELEANOR DELANEY and others, complainants *vs.* SOLOMON BOS-
TON, respondent.

The owner of both banks of a stream has a right to the stream, but may not divert it.
Each riparian proprietor holds to the middle of the stream ; one, therefore, cannot
dam it without the others consent, or legislative grant.
Such a grant is a *contract* with the state, and its conditions must be complied with.
The prior occupant of a mill seat established by riparian proprietorship, or legislative
grant, has a right to the flowage of the water below in its *natural course* and *descent.*
A riparian owner below has no right to divert the water from its natural bed.
If such owner has, fifty years ago, diverted the waters from their natural course, and
drawn them through an artificial canal, the riparian owners of the stream above ac-
quire a right to the flowage through this canal by *dedication* and *substitution,* and
the water cannot be again diverted even into its original channel.
Twenty years uninterrupted enjoyment of such an easement gives a right to the mill
owners above to vent their water by the same channel.
If a man cut a canal through his own land, so that the tide ebbs and flows through it,
and the public use it for *twenty* years for purposes of navigation, they acquire a
right by dedication to the continued use of it, of which the owner of the land can-
not deprive them, without legislative authority.

Issue from the Court of Chancery.

Herring creek is a natural water course, running parallel to Nan-
ticoke river, which it formerly emptied into at Seaford. At one point,
a mile above the town, it approached the river within a few rods ;
and, at this point, Steel the ancestor of Boston, being the owner of
both banks of Herring creek below, and of all the intervening land
between the creek and the river, about sixty years ago, cut a canal,
now called Green's race across this neck, so as to discharge the wa-
ters of Herring creek into the Nanticoke, through the race. At the
same time he made a dam, (called the tub mill dam,) across the bed of
Herring creek below Green's race, to exclude the waters from their
natural channel, and erected a saw mill on Green's race. This mill
blew up very soon, and the waters have ever since continued to flow

uninterruptedly through Green's race, which has become navigable and the tide water of the Nanticoke ebbs and flows into it.

Above Green's race on Herring creek, an old mill dam called Buckhannon's mill, was erected about forty years ago, and was destroyed by a flood in 1804, and the mill-site then abandoned. Delaney, having the Buckhannon title, moved higher up the stream of Herring creek, and erected his dam and mills in 1816.

The bed of Herring creek below Green's race continued shut up, and the waters from above flowed into the Nanticoke through Green's race until recently, when the respondent, Boston, having erected a mill below at the old junction of Herring creek and Nanticoke river at Seaford, with a view of restoring the waters of Herring creek to their ancient channel cut the old tub mill dam, and stopped up Green's race.

He claimed the right to do this as the owner of the land through which Green's race run, and the proprietor of both banks of Herring creek below. He had also obtained an act of assembly in 1837 enabling him to condemn more of the land on the margin of Herring creek, if needed for the use of his pond; but this act was guarded by a restriction against raising the water on the mills above him, so he did not avail himself of its provisions.

The effect of opening the ancient course of Herring creek and closing Green's race was, as the complainants contended, to drown and render useless their mills above; and they filed their bill in chancery for a perpetual injunction against Boston, from obstructing the free passage of the water through Green's race.

And the Chancellor sent the following issues to be tried at the bar of the Superior Court:—

1. Whether Green's race is an artificial canal cut, dug or made by man; and whether the same lies exclusively and entirely within the limits of the lands of the said Solomon Boston.

2. Whether the said Boston has such a prescriptive or other right to the waters of Green's race, as to obstruct and prevent the flowing and free passage of the said waters through Green's race into the Nanticoke river, so as to impede the free use and operation of complainants' mills.

3. Whether the complainants have such a prescriptive or other right to the waters of Green's race and Herring creek, as to entitle them to the free and unobstructed use and enjoyment thereof, so far as is necessary for the free use and operation of the said mills.

4. Whether the dam erected by Boston across Green's race, backs or ponds the waters of Green's race upon the mills of com-

plainants, so as to impede or prevent the free use and operation thereof.

5. Whether the dam which has been erected by Boston over or across Herring creek, at or near the village of Seaford, backs or ponds the waters of Herring creek upon the mills of the complainants, so as to impede or prevent the free use and operation thereof.

6. Whether Boston, since the last term of the Court of Chancery, has done any act or thing which backed or ponded the waters of Green's race and Herring creek, or of either of them, upon the mills of complainants, so as to impede or prevent the free use and operation thereof."

On the trial of the issues the *Court* charged the jury, that it being now beyond doubt, that Green's race was cut by man, and lies entirely within the lands of Boston, several questions arose as to the rights of Boston to the water flowing through the artificial canal so cut anciently by those under whom he claims. The court had agreed on the following general principles of water rights, which have application to this case :—

The prior occupant of a mill seat, established by the right of riparian proprietorship on both sides of a stream in such proprietor, or by legislative grant on payment of the condemnation money of the lands overflowed by the waters of such mill seat, has a right to flowage in the stream below his mills, for the purpose of venting the waters of his pond, according to the natural descent and course of the water.

A subsequent occupant of a mill seat on the same stream below, cannot back water on the prior occupant above, by denying him the natural descent and flow of the water.

If a riparian proprietor of a mill stream below another has, fifty years ago, diverted a natural water course from its ancient bed, through his own lands, having stopped the natural course of the water by a dam, and drawn the stream through an artificial canal into an adjoining river, the riparian proprietors of the stream above the canal, acquire a right to flowage through the canal by dedication and substitution ; and that fifty years, or even twenty years uninterrupted enjoyment of the canal by mill owners above the canal, gives a right by presumptive grant to such mill owners above, which cannot be destroyed by erecting a new dam and mill across the canal, and opening the bed of the old water course.

If a mill owner below cut a canal and suffer the riparian owners above him to use it for flowage for twenty years without interruption, such mill owner having stopped the natural water course at the time he cut the canal, and thereby drawn the water course through the canal, he thereby creates a right by presumptive grant in the

owners above to vent their waters through the canal of which he cannot deprive them by restoring the water course to its ancient bed.

The right of a riparian proprietor on one bank of a stream, extends only *usque ad filum aquæ*, or to the thread of the stream. He cannot, therefore, erect a mill seat across the stream, without the consent of the proprietors on the other bank of the stream, or legislative grant and condemnation, with compensation to the parties affected.

When a party claiming a mill right near the outlet of a stream, under a legislative act to condemn lands for his benefit, and to authorize him to erect his mill, is prohibited by the provisions of the act from backing water on the mills above on the same stream, he cannot take the benefits of the law without complying with its restrictions. The application by him for such a law and his acceptance of it, constitute it a contract between himself and the state, and the mill owners above, who are protected by the terms of the contract, may enforce their rights in law or equity, according to the conditions and restrictions contained in the act.

If a man cut a canal and divert a water course through his own lands by damming up the ancient bed of the stream, so that the water course flows through that canal for a period of twenty years, by his permission and direction, and the public use the canal during that period of time, for the purposes of navigation, the public acquire a right by dedication, to the free use and navigation of the canal, of which he cannot deprive them, without legislative grant, by building a mill across the canal, although he owns all the land through which the canal is cut.

The facts then which we shall assume hypothetically, and for the purpose of applying these principles, are the following :—

That Green's race is an artificial canal, dug by man; it was cut or dug by James Steel, about fifty years ago, for the purpose of turning the waters of Herring creek into the Nanticoke, and using them to work a saw mill. Such a mill was erected on that race, but it soon blew out on account of quicksands, and the mill was afterwards removed half a mile or more up Herring creek. Green's race lies entirely within the limits of Solomon Boston's lands.

That the original natural water course of Herring creek, is down what is now Boston's mill pond into the Nanticoke at Seaford, and not into the Nanticoke through Green's race.

That this old water course was dammed by James Steel, and a small tub mill erected below Green's race, before Green's race was cut. That mill went down before Green's race was cut, and the dam was closed at or about the time of the cutting Green's race, so as to close up the natural water course of Herring creek, which

has ever since remained so closed until January, 1837, when it was re-opened by Solomon Boston.

That the old dam above Green's race, called the Buckhannon mill, was erected about fifty years ago, and was swept away by a flood in 1804, since when it has not been put up.

That Delaney erected his mills in 1817, and dam in 1816.

That for fifty years past the waters of Herring creek above the old tub mill dam have used to flow through Green's race into the Nanticoke, the tide waters of which river constantly ebb and flow through the same; and the said race has always been open and navigable and used by boats and rafts.

If the jury think these facts or any of them, not proved as we have assumed them, then the principles announced do not, so far, apply to the case. The principles must be applied by the jury themselves to the facts which they consider proved.

Riparian rights. The owner of property adjoining a stream, has a right to the stream, using it so as not to injure any others. He cannot detain it nor divert it from its natural course or descent. If he own on both sides, he may erect a mill; if he have or can get all the land that the pond will dam, and if the ponding the waters will not back the waters so as to injure any one above, or detain them so as to injure any below. The water ought to flow in its natural course or descent; if that descent will allow the ponding, it may be lawfully done by the owner of the land to be ponded.

There are other rights, such as mill rights, obtained either by grant or long occupation and use. More than fifty years ago, Steel stopped the natural course of Herring creek, and opened Green's race. He had no right to do this, and he might have been sued by the riparian proprietors above for so diverting the water, and he could have been compelled to shut up Green's race, and to re-open Herring creek. But they have acquiesced for forty or fifty years after this water was diverted, and they have now lost the right to have this channel changed. What right has Steel acquired? If he cut Green's race for a saw mill, and used it as such for twenty years, he also acquired a right to continue the waters of Herring creek, running into Green's race, and to use them there for a saw mill; but if such waters have not been so used in Green's Race, but have been suffered to pass through there unobstructedly, then Steel and those claiming under him, have not acquired the right to use the waters through Green's race, by damming them for a mill; and the riparian proprietors above, have by the lapse of time acquired the easement of having the waters of Herring creek pass unobstructedly through Green's race. They originally had the easement, either as riparian owners or as mill proprietors,

to the free passing of the waters of Herring creek, down its natural course. Steel diverted that course unlawfully, but by twenty years acquiescence, these proprietors lost the right to object to it, and he acquired the right to continue to pass or use the waters in the course where he had unlawfully directed them. But as the upper proprietors lost the right to pass the waters in their original channel, they acquired the right to pass them through the new channel; and Steel or those claiming under him, could not afterwards lawfully change them back. The law of riparian proprietership applies to such a new water course, though artificial, in the same way as to a natural course. The water must flow ut solebat fluere, as it has been accustomed to flow.

It was remarked in the argument, that it was strange how a title by prescription should exist in this country. Prescription in England can only be from the time of legal memory, i. e. from the days of Richard II; a time to which we cannot in this country go back. But yet the decisions in this country have established a quasi prescriptive right; that is, the courts have said forty years enjoyment may be taken as evidence of a prescriptive right, a right founded on the presumption of existence back to the time of legal memory. 10 *East Rep.* 476.

*Ridgely* and *Bullett*, for Boston.
*Wootten* and *Frame*, for complainants.